STATE OF NORTH CAROLINA on relation of JOSEPH S. JONES, as Trustee, *vs.* JACOB F. BROWN.

In an action on a guardian bond, the right of the relator to sue under the former system of practice and pleading can be raised by demurrer, or on the plea of the general issue.

Under the old system, a trustee appointed by a Court of Equity is a proper relator in an action on a guardian bond to recover the trust fund.

A bond may be given as a security for equitable rights, and the non performance of the decree of a Court of Equity in relation thereto may be assigned as a breach of the bond.

This was an action of debt on the guardian bond of Ridley Brown as guardian of Mary F. Brown, to which the defendant Jacob F. Brown was surety. It was brought in the name of the State on the relation of Jones, who was substituted as trustee under a decree of the Court of Equity of Warren county, at Fall Term, 1863. On the trial at Fall Term, 1871, before *Watts, J.*, there was judgment for plaintiff, and defendant appealed.

The facts are sufficiently stated in the opinion of the Court.

*Moore & Gatling,* for the plaintiff.
*Batchelor* and *Plummer,* for the defendant.

RODMAN, J.    This is an action begun on 10th March, 1868, in the name of the State " on the relation of Jones, trustee, to the use of L. B. Eaton, appearing by S. W. Eaton his guardian," against Ridley Brown and Jacob F. Brown.    The writ was returned to Spring Term, 1868, of the Superior Court for Warren county, executed on Jacob Brown, but not on Ridley Brown.    At the same Term a *nol. pros.* was entered as to Ridley Brown, and judgment by default taken against Jacob Brown, with an order of inquiry as to damages, to be executed at next term.    The case was transferred to the docket of the new Superior Court in August, 1868 ; and at Fall Term, 1868, of that Court, the case is continued to Spring Term, 1869, when the bankruptcy of Ridley Brown is suggested ; a *nol. pros.* is entered as to him for the second time ; and Jacob F. Brown pleads " general issue, (execution of bond admitted) payment, release, accord and satisfaction," and it is referred to the clerk to state an account of the guardianship of Ridley Brown.    Afterwards that reference was set aside and one Davis was made referee, who, at Fall Term, 1871, reported an account to which exceptions were filed by defendant, Jacob F. Brown, which were overruled, and judgment given against him for the sum found due by the report, from which he appealed to this Court.

It is contended for the defendant that the action cannot be maintained on the relation of Jones, trustee, &c.    It is necessary to notice, very briefly only, the position of the counsel for the plaintiff, that the question was concluded by the refusal of the Judge to non-suit the plaintiff.    A plaintiff cannot be compelled to be non-suited if he is actually in Court prosecuting his action.    Moreover, such a refusal concludes nothing ; every

ground on which a defendant could ask for an opinion of the Court adverse to the right of the plaintiff, would continue open to him at the trial by asking instructions from the Court, and excepting if improperly refused. It is also a misconception on the part of the plaintiff that the question is one of jurisdiction arising out of some personal disability of the plaintiff. The State is the plaintiff of record, and can be under no disability. In not one of the cases was the objection to the relator taken by plea in abatement, and it would be difficult or impossible to draw such a plea. It would necessarily be in substance a plea that the condition had not been broken, and so be a plea in bar.

To understand the true nature of the objection, and ascertain whether it is now open to the defendants, it will be necessary to look at the course of pleading in actions on official or other bonds with conditions.

Rev. Code, ch. 54, sec. 5, enacts that all bonds taken from guardians shall be made payable to the State, and *any person injured* may, at his own costs, prosecute a suit thereon, and recover all damages he may have sustained by reason of the breach of the conditions thereof, and if judgment shall be rendered against the relator, he shall pay the costs. The relator who may prosecute the suit in the name of the State is *any person injured by the breach of the condition.* He must be named as relator in the writ of *capias,* because it is necessary for that to show by whom the suit is prosecuted, in order that it may be seen that some one, and who, is responsible for costs, and also because the writ usually and properly, after demanding the debt, contains the formula, " which the defendant detains to the damage of said Jones ten thousand dollars."

The declaration follows the writ, and after setting out the bond, with its condition, assigns a breach by which the relator was injured to a certain amount, &c.

If the defendant meant to take issue in law, that the relator was not a person that could, in law, be injured by the breach

assigned, he might have demurred. That was not done here. He might also plead denying the breach. In this case the defendant pleads " General issue, execution of bond admitted," &c. Certainly this was a very informal way of pleading performance, and it is only by making great allowance for the loose and inaccurate mode of pleading that was general before the present Code, that it can be considered to have that effect. As no objection was taken to it we construe it in that way. The authorities hereinafter cited show that the defence was held available under the plea of the general issue. By this plea an issue of fact is made for a jury. Upon this the relator would, of course, be entitled to recover only such damages as he had sustained by the breach. So that a question of law is involved, the same which would have been presented directly by the demurrer at a previous stage of the case, viz : whether the person alleged to be injured by the breach was in law injured ? Does he come within the condition of the bond ? Upon this the Judge will instruct the jury at the trial. It is in this way, and at this stage of the proceedings, that the question arises in this case. The exact shape of the question, and the precise time in which it would occur, might be varied by the form of the report of the referee, and of the exceptions thereto, &c. But still the Court must decide this question before or at the time of final judgment. We have said enough to show that the defendants had a right to raise this question at the trial. The Judge held this question in favor of the relator, and by the appeal we are called on to decide it.

We may be excused for expressing our regret at being compelled to decide questions of practice arising out of the fact that, under our former system, legal and equitable rights were administered in different Courts, and out of the rule of the law Courts that they would take no notice of equities. Our decision must be founded on a state of the law which has passed away, and though from its importance to the present

parties, it requires and has received our patient consideration, yet it is of no importance to any one else.

In deciding such a question we feel bound to decide in exact accordance with the rule established by previous decisions, if such a rule can be found applicable; but if no such can be found, then of course we are obliged to decide upon what seems to us the reason which governs the case. We have examined all the authorities to which we were referred by the learned counsel.

*State* v. *Lightfoot* 2, Ire. 306, was an action on a constable's bond; the relators were two of the members of the firm of Evans, Home & Co.; the breach assigned was that the constable had failed to pay to the relators a sum collected by him of London, who was a member of the firm when the claims were put into his hands, but who had ceased to be so before the breach. The Court say that the persons *with whom he contracted* (that is all the original partners) were in contemplation of law the persons injured, and the plaintiffs were not entitled to recover.

*The Governor* v. *Deaver* 3. Ire. 56, was also on a constable's bond, and the claim given the constable to collect was assigned by the relator to a third party afterwards. The Court held that the action was properly brought on the relation of the person who had put the claim in the hands of the constable, because the contract was made with him.

*State* v. *Clark* 10, Ire 172, was an action on an administration bond. The relators were husband and wife, the wife was one of the distributees of the intestate, but they had assigned their interest to one Smith, before action brought. The Court held that the legal title being in the relators, and not assignable at law, they were properly made relators, instead of Smith.

*State* v. *Miller*, 11 Ire. 235, was an action on a Clerk's bond. The Court held that the relator must be the person entitled to the legal interest.

The cases on Constable's and Clerk's bonds we think have no application. It would not be difficult to assign reasons, but rather than be prolix we forbear to do so. We conceive that the case of the *State* v. *Clark* lays down the rule to be followed. The relator must be a person having a *legal* interest in the performance of the duties which the guardian assumes. So the question is reduced to this : Did Jones have a legal interest?

In 1858, Ridley Brown became the guardian of Lucy Brown and made the bond declared on. In 1860, the ward, in contemplation of marriage, conveyed all her personal property, consisting of slaves, bonds, &c., to her said guardian, to hold in trust, and in 1861, she and her husband joined in a deed conveying all her interest under the deed of 1860, to Jones, in trust. So that under this deed Jones had nothing but an equitable interest in any part of the property. Consequently [under the cases cited he could not recover upon a breach of duty by the guardian to him, arising out of his equitable estate ; that is, he could not sue as relator by virtue of such estate.

We are now obliged to consider another question. Under the former system of pleading, in an action on a penal bond, no breaches were actually assigned ; but it was considered that the plaintiff assigned all the breaches which his case entitled him to do. Happily so loose a practice has disappeared under the Code, but we must respect it, in cases that began under it.

The relator and Samuel Eaton filed a bill at October Term, 1862, of the Court of Equity for Warren County, against Ridley Brown, as guardian and trustee as aforesaid, and against the ward and her son La Fayette Eaton. At October Term, 1863, it appearing that Brown desired to be relieved of his trusteeship, the Court substituted Jones for him, and ordered that Brown, convey to Jones " all the property, estates, rights and credits " mentioned in the deed of 1860, and deliver to him " all the slaves, securities, and other property and estate," held

and admitted to be held by him under that deed; and it was referred to the master to state an account, &c.

At October Term, 1866, it was ordered that Brown pay to Jones as trustee $2,000.

We must therefore assume that the relator has in this suit assigned as a breach of the bond sued on, a refusal or failure by the guardian to perform each of these decrees. The question then arises whether by force of these decrees the relator is a person injured under the Act, and whether he comes within the condition of the guardian bond, which is set out in the case and contains these words: "Now if the said Ridley Brown shall faithfully, &c., and deliver up, pay to and possess the said wards of all such estate or estates as they ought to be possessed of, or to such other persons as shall be lawfully empowered or authorized to receive the same," &c.

We think it can scarcely be doubted that a person to whom a Court of Equity has decreed that a guardian shall pay the fund, is a person injured by a refusal to do so, within the sense of the act, and a person authorized to receive within the condition of the guardian bond. A bond may be given as a security for equitable rights. The only reason why a Court of law will not allow an equitable assignee to be a relator, or a failure to perform a duty which is regarded as such only in a Court of Equity to be assigned as a breach, is because Courts of law cannot determine equitable rights and duties; but when these have been determined by the proper Court, that difficulty no longer exists, and the non-performance of the decree may be assigned as a breach.

We think also that under the breach assigned arising out of the failure to perform the decree of 1863, the question of damages is an open one, and that the relator is not confined to the sum ordered to be paid in 1866, which does not profess to be in full. These decrees are not conclusive against the surety in one sense; they do not conclude as to him that in 1863, the

31

guardian had any funds, &c., of the ward, or that he owed the representative of the ward $2,000 in 1866.

As to these matters they are only evidence. But they must necessarily conclude him from denying that the relator represented the ward, and was entitled to the estate in the hands of the guardian whatever it might be.

This brings us to the questions raised by the exceptions to the report, and as they are important and perhaps difficult, and were only slightly or not at all dicussed by counsel, we defer our judgment in order that these may be argued again.

PER CURIAM.