RIDDLEBERGER ET AL. *v.* GOELLER, EXECUTOR OF THE ESTATE OF MARY A. PHILLIPS

[No. 57, September Term, 1972.]

*Decided November 14, 1972.*

The cause was argued before MURPHY, C. J., and McWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Thomas C. Beach, III,* with whom were *John H. Somerville* and *Clapp, Somerville, Black & Honemann* on the brief, for appellants.

*Ronald J. Kearns* for appellee.

SMITH, J., delivered the opinion of the Court.

In this case there was an attempted end run around our decision in *Riddleberger v. Goeller,* 263 Md. 44, 282 A. 2d 101 (1971). The end run was successful in the Orphans' Court of Baltimore County. As the ultimate referee, however, we shall be obliged to drop a flag on the play, thus nullifying the apparent gain. This case, as was the earlier case, under Code (1969 Repl. Vol.) Art. 93, § 12-102 (a) must be decided under the law as it existed prior to January 1, 1970, since the date of death of the person whose estate is here involved was May 28, 1968.

In *Riddleberger* challenges were made to the amount allowed as counsel fees and the percentage allowed as commissions to the executor. The executor first claimed commissions of 10% on an estate of $70,743.46. The orphans' court allowed but $4,029.73. Then an account was filed in which commissions of 10% on the first $20,000 and 4% on the remainder were claimed. After a hearing on exceptions, the orphans' court fixed the commissions at 10% on the first $20,000 and 2% on the excess, with the further direction that the executor pay from the commissions the sum of $628.86 to one of the heirs for her

services to the estate in managing certain real property, that sum being 10% of the rentals collected during that period. Under the prior decisions of this Court we declined to disturb the commissions since they were within the limitations prescribed by law. We held an attorney's fee of $3,250 to be excessive and concluded that a fee of $500 to the attorney would be a proper one.

Promptly after the remand, in an apparent attempt to nullify the effect of our decision, the executor filed a petition in which he recited that the commissions previously allowed were "at a rate reduced in consideration of the fact that an Attorney's fee was also to be allowed as an Estate expense," that this Court held the proper fee to be $500, that the executor "ha[d] well and faithfully performed all his duties and ha[d] fulfilled all his responsibilities and [stood] ready to finally close this Estate and [was] therefore entitled to the full commissions allowed by law." In due season hearing was held before two of the judges of the Orphans' Court of Baltimore County. The matter was held *sub curia* and then a hearing was rescheduled, indicating, so the executor says, "that there was a split of opinion between the Judges and that the Motion would be heard by the Court, sitting in banc." A second hearing was then held before the full court. Two judges passed an order setting commissions at 10% on the first $20,000 of the personal estate and 4% on the excess, giving rise to the inference that a split of opinion continued.

The executor cites 1 Sykes, *Probate Law and Practice* § 206 at 218 (1956), in which the author states:

> "The Orphans' Court has the inherent power to correct errors into which it has fallen and to that end it may abrogate or modify its own orders when necessary in the interest of justice."

and § 207 of Sykes for the proposition that the jurisdiction of the orphans' court had not terminated. He states that case law "is rife with situations where the Court of Appeals has upheld the power of an Orphans'

Court to amend, alter or rescind its own order," and then argues that the orphans' court here made "an honest mistake in thinking that the original counsel fee would, in a sense, comprise a part of the commissions."

If the orphans' court in fixing commissions took into consideration, as the executor has contended in his petition and argument, that the attorney's fee was to be allowed as an estate expense, he has obtained information from that court which does not appear at any point in the record.

It might well be argued in this case that the defense of res judicata is applicable, the parties being the same and the issue of executors' commissions basically the same as in the prior trip to this Court. *See Johnson v. Johnson*, 265 Md. 327, 331, 289 A. 2d 318 (1972). For the purpose of this opinion, however, we shall consider that defense not available and address ourselves to the basic question of whether the Orphans' Court of Baltimore County is guilty of abusing the discretion lodged in it.

The types of situations in which the power of an orphans' court to amend, alter, or rescind its own order for the purpose of correcting errors are set forth in the remainder of § 206 of Sykes which states, after quoting the sentence cited by the executor:

> "Thus, it may revoke letters of administration improvidently granted, and the probate of a will when obtained through fraud, deceit, or mistake, the exercise of such authority being necessarily of the essence of the power to grant letters and to admit wills to probate. It may also, on application, authorize the correction of an inventory by omitting property erroneously included, correct an error in allowing commissions on the par value of bonds rather than on their appraised value, or in imposing costs reduce commissions, and, in general, rectify errors in administration accounts even after ratification. Where an order of ratification of a sale of real

> property is obtained by deceit and imposition
> or procured by an honest mistake, the court has
> the power of revocation and correction, provided
> the application be made within a reasonable
> time."

One of the leading cases on error as permitting change, cited by both parties and by Judge Sykes, is *Malkus v. Richardson,* 124 Md. 224, 92 A. 474 (1914). There an administration account had failed to make any provision for the widow of the decedent. Two and a half years after passage of the account the widow was permitted because of that error to reopen the account.

In *Gallagher v. Martin,* 102 Md. 115, 62 A. 247 (1905), an administration account was prepared by an obliging register of wills for the executor.[1] The executor advised the register that shortly prior to the death of the testatrix a sum of money had been paid to a legatee equal to the amount specified in the will as a legacy and that this had been understood by all parties to have been made for the purpose of satisfying the legacy. Nevertheless, in the account the register showed distribution made for the legacy. After the account was passed suit was brought for the legacy. The error was then held to be such as could be corrected by an order of the orphans' court.

In *Geesey v. Geesey,* 94 Md. 371, 51 A. 36 (1902), it was claimed that an attorney's fee for defending a suit against the estate had been improperly allowed in the account. It was held that the orphans' court could reopen an account if it had inadvertently made an allowance that was not proper.

In *Hoffman v. Hoffman,* 88 Md. 60, 40 A. 712 (1898), the executors asked the Orphans' Court of Washington County for permission to file an amended third account. Permission was denied. Our predecessors reversed because the executors claimed that in the account they had

---

1. For comment as to this practice, *see* Riddleberger v. Goeller, *supra,* at 57.

filed there were omissions to charge themselves and also failure to make the proper credits.

*Hardt v. Birely,* 72 Md. 134, 19 A. 606 (1890), has been quoted extensively by both sides and has been quoted many times by this Court. There an administration account had been filed in which 8% commissions had been allowed. A trustee later filed a petition asking that these commissions be struck out on certain of the items, claiming that they had not actually been collected by the executor. Our predecessors held this was such an error as the orphans' court had the power to correct and, therefore, that the petition was properly cognizable by that court, although on the merits it was held that the commissions were properly payable.

In *Gavin v. Carling,* 55 Md. 530 (1881), a man died leaving a widow and minor children surviving him. Letters of administration were granted to the widow. She filed an account in which she appropriated to her own use at the appraised value the entire estate, consisting for the most part of leasehold property, in satisfaction of her advances to the estate to pay its debts and expenses and of her distributive share. She and her second husband improved the property, placing a mortgage upon it. Carling bought at a foreclosure sale. She died and her children by the first marriage moved in the orphans' court to reopen the estate. Judge Alvey said for the Court:

> "The account being thus erroneous upon its face, and subject to impeachment by those interested in the proper settlement of the estate, it was perfectly competent to the Orphans' Court, upon application, to re-open the account, and to direct a restatement thereof, in order to correct the errors disclosed. . . ." *Id.* at 536.

In the case of *In re Estate of Stratton,* 46 Md. 551 (1877), the inventory showed some bonds with a face value of $13,000. The appraisers said they had no means of ascertaining the market value. An account was passed

in which the administrators claimed a 10% commission on the assets including the bonds at $13,000. The orphans' court passed an order modifying the sum allowed for commissions in the first account by deducting as a basis of commissions the $13,000 for those bonds. It ordered a warrant to issue for the appraisement of the bonds, reserving the right of adjusting upon passage of a final account the amount of commissions to be allowed. Our predecessors held the orphans' court was not in error since it was manifest from the terms in which the bonds were mentioned in the inventory that it was not the purpose or intention of the appraisers to affix to them any certain value, that they had not been appraised, and, therefore, the allowance of a commission upon them at their par value was manifestly in error and could be corrected by the court.

It will be seen from the cases we have reviewed on the subject of the power of orphans' courts to correct errors that none of the cases cited remotely resembles the one now before us. The cited cases represent some of the types of errors mentioned by Judge Sykes in his work as being grounds for change of a prior orphans' court order.

In the case of *In re Estate of Watts,* 108 Md. 696, 71 A. 316 (1908), our predecessors dismissed an appeal taking issue with commissions allowed in an estate. In so doing Judge Thomas said for the Court:

> "Where a lower tribunal is charged with the performance of duties, in the discharge of which it is clothed with discretion, in the absence of clear and satisfactory proof of its refusal, or of such arbitrary conduct as amounts to a refusal, to exercise that discretion, its action, within the limits of the discretion vested in it, cannot be controlled or reviewed on appeal." *Id.* at 699-700.

From that it must follow that in a proper case where there is clear and satisfactory proof of a refusal of the

orphans' court, or of such arbitrary conduct as amounts to a refusal, to exercise that discretion with which it is clothed, we will take action.

We must assume in evaluating this case that the orphans' court in its earlier order fixing commissions considered all of the criteria that should have been considered by that court in fixing commissions. There is nothing in the record to show that it did not. The prior order had reached the state of finality where it was the subject of an appeal to this Court. As we indicated in our prior opinion, the intent of the law is not to compensate an executor or administrator "in effect for the honor of serving as personal representative," but to compensate him for the duties such a personal representative is expected to perform, even though he may hire an attorney at his expense to perform a part of those services. We made plain that counsel should not "be paid from estates for the routine work of executors or administrators, such as opening bank accounts, procuring appraisals, and corresponding with creditors." For the Orphans' Court of Baltimore County to now come along and allow a higher rate of commission to the personal representative for the same work which that court previously evaluated as worth a lesser amount of dollars we hold to be an arbitrary abuse of the discretion lodged in that court.

*Order reversed, the costs to be paid by Frederick S. Goeller, individually.*